# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADEAN DENT,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ELVA LOPEZ, M.D.; C. R. BARD, INC., A NEW JERSEY CORPORATION; DAVOL, INC., A NEW JERSEY CORPORATION AND A WHOLLY OWNED SUBSIDIARY OF C. R. BARD INC.; SOFRADIM PRODUCTION SAS; AND DOES 1-100,<br><br>　　　　　　　Defendants. | Case No. 1:14-CV-00442-LJO-SMS<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DISMISSING DEFENDANTS' MOTION TO STAY AS MOOT.<br><br>(Doc. Nos. 7 and 8) |

Before the Court in the above-styled and numbered cause of action are Defendants' Motion to Stay All Proceedings Pending a Decision on Transfer by the Judicial Panel on Multidistrict Litigation, filed March 28, 2014 (Doc. No. 7), and Plaintiff's Motion to Remand to the Superior Court of Kern County, California and Request for Award of Costs and Attorney's Fees, filed April 1, 2014 (Doc. No. 8). Having considered the motions and governing law, the Court will grant Plaintiff's motion for remand and dismiss Defendants' motion to stay as moot.

I.  **Background**

On January 10, 2014, Plaintiff Nadean Dent, a California citizen, filed this case in California state court against Defendants Elva Lopez, M.D. ("Dr. Lopez"), a California citizen, and Defendants C. R. Bard, Inc. and Davol, Inc. (together "the removing Defendants" or "Bard").

1

Plaintiff seeks damages for injuries she suffered allegedly as a result of a surgery, performed by Dr. Lopez, implanting Defendant Bard's medical device (a pelvic mesh).

On March 26, 2014, Bard removed the case to federal court, asserting diversity. Removing Defendants concede that Dr. Lopez is domiciled in California, which, they admit, would normally defeat diversity under 28 U.S.C. § 1332. However, removing Defendants assert that the diversity requirement of 28 U.S.C. 1332(a) is satisfied, citing the Court of Appeals for the Eleventh Circuit case *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000), because Dr. Lopez was "fraudulently misjoined" in the action for the purpose of defeating diversity.

On March 28, 2014, Bard filed a Motion to Stay, by which they argue that the Court should first consider the motion to stay before jurisdictional issues. They contend that the Court should grant the motion because, in the interest of conserving judicial resources and promoting consistency, the issue of jurisdiction should be reserved for consideration by the MDL Panel.

On April 1, 2014, Plaintiff filed her Motion to Remand to the Superior Court of California for Kern County. Plaintiff argues that, as a threshold matter, jurisdictional issues should be decided before the motion to stay. She further argues that the doctrine of "fraudulent misjoinder," which serves as an exception to removal requirements as recognized by the Eleventh Circuit in *Tapscott,* does not apply. Plaintiff alleges that she and Defendant Elva Lopez, M.D., are residents of the State of California, while Defendants C. R. Bard, Inc., Davol, Inc., and Sofradim Production SAS are corporations organized and existing under the laws of New Jersey. On that basis she argues that the case lacks complete diversity, and, thus, the Court should remand to state court. There is no dispute that the amount in controversy exceeds $75,000.

A federal MDL has been established in the Southern District of West Virginia to coordinate federal actions involving Bard. *See In Re: C.R. Bard, Inc., Pelvic Repair System Liability*

*Litigation* (MDL 2187). Bard provided notice to the MDL Panel of this action, and the Panel issued a Conditional Transfer Order ("CTO") on April 1, 2014. *See* MDL No. 2187, Case CAE/1:14-CV-00442-LJO-SMS (Doc. No. 4). Plaintiff filed a notice of opposition to the CTO on April 1, 2014. *See Id.* (Doc. No. 6).

The parties' motions are ripe for consideration.

## II.     **Legal Standard**

A defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1441(a). District courts also have original jurisdiction over actions where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between parties. 28 U.S.C. §§ 1331(a), 1332(a). In other words, plaintiffs must be citizens of different states than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

Removal statutes are to be strictly construed, *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of establishing the existence of federal subject-matter jurisdiction. *See, e.g., Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Prize Frize, Inc. v. Matrix Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) ("burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."); *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. Ex. Rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute.").

If "at any time before final judgment" the district court determines it lacks subject-matter jurisdiction, the case must be remanded. 28 U.S.C. § 1447(c). A district court should remand an action to state court if it appears that it was removed improvidently. *Id.* "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

## III. Discussion

A.  Decision Sequence

Before the Court can evaluate the parties' motions it must determine whether, as Plaintiff suggests, the Court should first address jurisdiction before addressing the motion to stay, or, as removing Defendants argue, the issue of jurisdiction should be reserved for consideration by the MDL Panel. The Court thus begins by assessing the appropriate order in which to proceed.

Plaintiff relies on Supreme Court and Ninth Circuit precedent in support of her argument that the Court should address its jurisdiction prior to other threshold matters. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. . . [i]t is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction"); *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008) ("federal courts normally must resolve questions of subject matter jurisdiction before reaching other threshold issues. Only where the other issue itself creates the jurisdictional issue . . . or the resolution of the issue is clear while the jurisdictional issue is difficult, . . . is it appropriate for the Court to proceed without confirming jurisdiction."); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1054 (N.D. Cal. 2004) ("[I]t is in the interest of judicial economy to decide issues of jurisdiction as early in the litigation process as possible. If federal jurisdiction does not exist, the case can be remanded before federal resources are further expended . . . .").

4

Plaintiff details a long list of pelvic mesh cases where a removing defendant alleges fraudulent misjoinder in similar circumstances and a district court finds it appropriate to address the jurisdictional issue before the competing motion to stay, and ultimately finds removal improper. For instance, the Central District of California recently remanded four identical product liability cases to state court after mesh manufacturers improperly removed the cases. *See Haston v. Yeo, et al.*, No. ED CV 13-00364-JFW (OPx), (C.D. Cal. Mar. 11, 2013) (Walters, J.) (finding that the defendant failed to demonstrate fraudulent joinder under California law, thus, complete diversity of citizenship was lacking); *Goodwin v. Kojian*, Case No. 13-cv-325-JST (C.D. Cal. Apr. 12, 2013) (Tucker, J.) (finding that fraudulent misjoinder did not apply and both plaintiff and implanting doctor were citizens of California for diversity purposes); *Lung v. Schlesinger*, Case No. 13-cv-00672 SJO (C.D. Cal. Apr. 1, 2013) (Otero, S.) (finding that the California doctor was not fraudulently joined, thus, complete diversity was lacking and removal was improper); *Guardado v. Highshaw*, Case No. 13-cv-365 PSG (C.D. Cal. May 6, 2013) (Gutierrez, P.) (finding it appropriate to address plaintiff's motion to remand rather than staying case and deferring jurisdictional issues to MDL court). Plaintiff further offers that the Northern District of California also recently remanded a pelvic mesh products liability case to state court on the same basis, concluding that mesh manufacturers improperly removed the case. *See Lopez v. Pfeffer, et al.*, Case No. 13-cv-03341-NC (N.D. Cal. Sep. 25, 2013). Although Plaintiff acknowledges that the Eastern District of California has issued divergent opinions on this topic. *Compare Perry v. Luu*, Case No. 13-cv-729-AWI-JLT, 2013 WL 3354446 (E.D. Cal. July 3, 2013) (first considering the matter of jurisdiction where defendant mesh manufacturers removed under the Eleventh Circuit's *Tapscott* decision on "fraudulent misjoinder," declining to apply a theory not adopted by the Ninth Circuit, finding removal improper, and granting plaintiff's motion to remand), *with Rubio v. Arndal*, 2013 WL

5

796669 (E.D. Cal. Mar. 4, 2013) (considering the motion to stay first for the purposes of judicial efficiency and fairness, and finding the motion to remand moot).

According to Defendants, "other courts in California, including courts in this district, have *granted* motions to stay and *denied* motions to remand in other pelvic mesh cases involving the fraudulent misjoinder of local physicians." Defendants' argument relies on cases where courts reserved the jurisdictional issue for the MDL panel because the issues were "factually and legally complex." *See Rubio*, *supra*, (granting a motion to stay a pelvic mesh case removed on the basis of fraudulent misjoinder of a resident physician and denying plaintiffs' motion to remand as moot, reasoning that "fraudulent misjoinder" is factually and legally difficult and, for the purposes of judicial efficiency and consistency, the JPML should determine the jurisdictional issue); *Thomas-Lanska v. Hanna*, Case No. 13-cv-1434-ABC (Ex) (C.D. Cal. Apr. 9, 2013) (same); *Pecoraro v. Sanghei-Kim*, Case No. 13-cv-00987-JGB (SPx) (C.D. Cal. July 10, 2013) (same); *Cooper v. Siddighi*, Case No. 12-cv-00345 JGB (SPx) (C.D. Cal. May 8, 2013) (same).

The Court is unconvinced by Defendants' argument, which essentially relies on a case out of the Northern District of California, not on mandatory authority.[1] *See Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049 (N.D. Cal. 2004) (finding the *Meyers v. Bayer AG,* 143 F.Supp.2d 1044, 1048–1049 (E.D.Wis.2001), three-part test "helpful" when reviewing simultaneous remand and stay motions in a patent-law and MDL context; finding it appropriate to end the court's analysis after the first prong and remand to state court if, after a preliminary assessment of the propriety of removal, the court concludes that removal was improper). *Conroy*,

---

[1] Even if the Court followed the three-point test in *Conroy*, the first step is a preliminary review of the merits of Plaintiff's motion to remand. Here, there are two variables that inform the propriety of removal, whether: (1) complete diversity is lacking and, (2) fraudulent misjoinder applies. Diversity is not a complex issue; removing Defendants concede Dr. Lopez is a resident of California. Second, removing Defendants argue "fraudulent joinder" and that the issue of whether the exception applies *is* difficult. Not so. Application of the doctrine is easily resolved. "Fraudulent misjoinder" is Eleventh Circuit doctrine. This Court is in the Ninth Circuit. The Ninth Circuit has not adopted the doctrine.

6

325 F. Supp. 2d at 1053.  This cuts against Bard's argument.  Moreover, "the Ninth Circuit has not expressly adopted this approach." *Id.*

The Court instead references its historical obligation to determine jurisdiction before taking adjudicative action.  In a unanimous decision by the Supreme Court, Justice Ginsburg writes, "[i]n most instances, subject-matter jurisdiction will involve no arduous inquiry, and both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 576, 119 S. Ct. 1563, 1566, 143 L. Ed. 2d 760 (1999).  In *Ruhrgas*, the Court found that, in the context of two competing threshold issues, in that case personal and subject-matter jurisdiction, district courts generally should decide subject-matter jurisdiction first.

There can be no disagreement that district courts are courts of limited jurisdiction.  *See Kokkonen*, 511 U.S. at 377.  It is well-settled law that, "a federal court may not rule on the merits of a case without first determining that it has jurisdiction . . . ." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.* 549 U.S. 422, 430-31, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007); *see also Kokkonen*, 511 U.S. at 377 (as a threshold matter, federal courts are obligated to determine whether they have jurisdiction before acting).  A district court generally has discretion to decide threshold questions before considering its jurisdiction.[2]  *Sinochem*, 549 U.S. at 431 (a district court may decide threshold questions such as *forum non conveniens* before jurisdictional issues).  However, in the Ninth Circuit, "federal courts normally must resolve questions of subject matter jurisdiction

---

[2] The federal process "allows for leeway."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586-87, 119 S. Ct. 1563, 1571, 143 L. Ed. 2d 760 (1999).  For example, if a threshold issue such as personal jurisdiction presents "difficult questions of [state] law," and subject-matter jurisdiction is easily resolved, "a district court will ordinarily conclude that "federalism concerns tip the scales in favor of initially ruling on the motion to remand." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586-87, 119 S. Ct. 1563, 1571, 143 L. Ed. 2d 760 (1999) (quoting  *Allen v. Ferguson,* 791 F.2d 611, 616 (C.A.7 1986)).  Though, in other cases, "the district court may find that concerns of judicial economy and restraint are overriding." *Id.* (citing, *e.g., Asociacion Nacional de Pescadores v. Dow Quimica,* 988 F.2d 559, 566–567 (C.A.5 1993) (if removal is nonfrivolous and personal jurisdiction turns on federal constitutional issues, "federal intrusion into state courts' authority ... is minimized").

*before* reaching other threshold issues." *Potter*, 546 F.3d at 1061 (emphasis added). Issues of severability or a stay of proceedings are, respectively, threshold issues other than subject-matter jurisdiction. Logic demonstrates that these other threshold issues, then, should be resolved *after* the Court resolves the question of subject-matter jurisdiction.

The bulk of decisions from district courts around the Ninth Circuit resolve the remand-versus-stay issue in a similar way. Indeed, in addition to the numerous cases listed by the Plaintiff, the Court notes that as to the great majority of factually similar cases in the circuit when courts have evaluated the issue of sequence, district judges have, after careful and thorough analysis, concluded that a district court should first address the jurisdictional issue. *See, e.g.*, *Shears v. Park*, 1:13-CV-01298-AWI, 2013 WL 5492257 (E.D. Cal. Oct. 1, 2013) (concluding that the Court has an obligation to assure itself of its jurisdiction because district courts are "courts of limited jurisdiction,") (citing *Kokkonen,* 511 U.S. at 377; *Gen. Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 968–69 (9th Cir. 1981)); *see also Lopez v. Pfeffer*, 13-CV-03341 NC, 2013 WL 5367723 (N.D. Cal. Sept. 25, 2013) (finding, under the first step of the *Conroy* approach, that the analysis ends and concluding that a court should determine the motion to remand before addressing the motion to stay; moreover, even applying the *Fortune* approach, reaching the same conclusion to grant the motion to remand and moot the stay) (citing *Conroy*, 325 F.Supp.2d at 1053, and *Fortune v. McKesson Corp*, No. 13-CV-03172 JSW, 2013 WL 4104121 (N.D. Cal. Aug. 12, 2013) (finding appropriate test for competing motions is to balance fairness and judicial economy)); *see also Brock v. Stolt–Nielsen SA,* No. 04–CV–1992 FMS, 2004 W L 1837934, at * 1 (N.D. Cal. Aug. 17, 2004) (deciding motion to remand before motion to stay and noting "[a]lthough the Court has the inherent power to stay proceedings, it balances that discretion against its historic obligation to ensure jurisdiction is proper") (internal citations omitted)); *see also Osborn v. Metro. Life Ins. Co*., 341 F.Supp.2d 1123, 1128 (E.D. Cal. 2004) (addressing the motion to remand before the stay and

rejecting the fraudulent misjoinder doctrine); *see also Ramirez v. Our Lady of Lourdes Hosp. at Pasco*, 2:13-CV-01108-RSM, 2013 WL 5373213 (W.D. Wash. Sept. 25, 2013) (concluding that the Court shall first address the jurisdictional issue) (collecting cases).

In addition, to summarize Rule 18 of the Rules of the Judicial Panel on Multidistrict Litigation, "a district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' [sic] motion to the MDL Panel for transfer and consolidation." *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997)). Pursuant to Rule 2.1(d), "[t]he pendency of a motion . . . [or] conditional transfer order . . . before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court."

Even at first blush, when compared to analyzing simple jurisdictional variables, performing a multi-part test to demonstrate how reserving severability and removal issues for an MDL panel's consideration would be preferable and might function to conserve judicial resources and promote consistency is, by contrast, difficult. This Court agrees with Judges Karlton and Tigar that "confusion could be reduced if removing parties would challenge fraudulent joinders and misjoinders in state court, before defendants file a removal notice." *Carper v. Adknowledge, Inc.*, 13-cv-03921-JST, 2013 WL 5954898 (N.D. Cal. Nov. 6, 2013) (Tigar, J.) (quoting Wright and Miller § 3723); *see also Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127-28 (E.D. Cal. 2004) (Karlton, J.) (citing the same); *but see* Hines & Gensler, 57 Ala. L.Rev. at 808–12 (asserting the opposing view)).

In any event, fairness and judicial economy arguments lend additional strong support for deciding subject-jurisdiction here and now. The Ninth Circuit explicitly states that "[o]nly where the other issue itself creates the jurisdictional issue . . . or the resolution of the issue is clear while the jurisdictional issue is difficult, . . . is it appropriate for the Court to proceed without confirming

9

jurisdiction." *Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir. 2008).  Neither of those circumstances is present here.  Rather than sending the case to a West Virginia MDL panel unfamiliar with the unique factual circumstances of Plaintiff's case, this Court may remand to a state court judge who is already familiar with the facts and relevant California law.[3]  The Court finds persuasive the proposition that judicial economy is best served by deciding jurisdictional issues as early in the litigation process as possible.  *Conroy* 325 F.Supp.2d at 1054.  Emphasizing that "the authority to sever misjoined claims or defendants under Rule 20 *presumes* the Court has jurisdiction to act," district courts have declined to put the cart before the horse and, "in full recognition of the lack of diversity jurisdiction," adjudicate severability, and "*only then* find [the Court] has jurisdiction.  *See, e.g., Shears v. Park*, 1:13-cv-01298-AWI, 2013 WL 5492257 (E.D. Cal. Oct. 1, 2013) (original emphasis); *see also Carper v. Adknowledge, Inc*., 13-cv-03921-JST, 2013 WL 5954898 (N.D. Cal. Nov. 6, 2013) (finding that removing party did not meet its burden of demonstrating that removal is proper under the "fraudulent misjoinder" doctrine, assuming that the doctrine applies, and noting the inefficiencies of "removing first and answering questions later").

In sum, the simplest solution is often the best solution.  Considerable precedent supports the proposition that in this context, the Court should, at its discretion, first determine whether it has jurisdiction before turning to other threshold matters.

On that path, the Court will proceed accordingly.

B.  Jurisdiction

On its face, the motion to remand suggests that removal was improper.  Removing Defendants concede that Dr. Lopez is domiciled in California, as is Plaintiff.  This generally defeats diversity under 28 U.S.C. § 1332.

---

[3] Because of the similarity between California Code of Civil Procedure Section 379(a)(1) and Federal Rule of Civil Procedure Rule 20(a)(1), the Court need not address which rule should apply in determining if an exception has been satisfied for purposes of removal and remand.  *See, e.g., Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504-05 (E.D. Cal. 2008).

10

This requires no arduous inquiry. The district court has original jurisdiction over actions in which there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (plaintiffs must be citizens of different states than each of the defendants). As removing Defendants concede that a party in each column is domiciled in California, the case lacks complete diversity. In light of this reasoning, barring any exception, removing Defendants have not carried their burden to show that removal was proper. *See Abrego*, 443 F.3d at 683-85; *see also Calif. Ex. Rel. Lockyer*, 375 F.3d at 838.

C.  Fraudulent Misjoinder

Despite the weight of the case law in this circuit to the contrary, removing Defendants contend that Dr. Lopez's citizenship may be disregarded for purposes of removal under a version of fraudulent joinder, an exception for the purposes of removal referred to as "fraudulent misjoinder." The doctrine of fraudulent misjoinder emerged from the *Tapscott* decision out of the Eleventh Circuit Court of Appeals. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

Defendants' argument, founded on Eleventh Circuit case law, is unavailing. This Court is in the Ninth Circuit, not the Eleventh Circuit. In this context, "fraudulent misjoinder" is not legally complex. The doctrine is simply inoperative in this circuit. Though it has acknowledged the doctrine in an unpublished case, the Ninth Circuit has not adopted, approved, nor applied the theory of "fraudulent misjoinder." *See California Dump Truck Owners Ass'n v. Cummins, Engine Co., Inc.,* 24 Fed. Appx. 727, 729 (9th Cir. 2001); *see also Thakor v. Burlington Ins. Co.,* No. C 09–1465 SBA, 2009 WL 1974511, at *4 (N.D. Cal. July 8, 2009) (Armstrong, J.) ("The Ninth Circuit has not adopted *Tapscott*"); *Brazina v. The Paul Revere Life Ins. Co.,* 271 F.Supp.2d 1163, 1172 (N.D. Cal. 2003) (Patel, C.J.) ("The Ninth Circuit has not found occasion to address *Tapscott*"); *see also Osborn,* 341 F.Supp.2d at 1127 (Karlton, J.) (emphasizing the Ninth Circuit has not adopted

11

the *Tapscott* "misjoinder of parties" theory); *see also Perry*, 2013 WL 3354446 at * 4 (Thurston, M.J.). This Court likewise declines to adopt the doctrine.

In cases factually similar to the instant cases, the great majority of judges in this circuit similarly conclude that the doctrine of fraudulent misjoinder is inapplicable, but assume, *arguendo*, its viability, only to further conclude that *Tapscott* is easily distinguishable on the facts. *See, e.g., Martin v. DePuy Orthopaedics, Inc.*, 12CV2292-LAB JMA, 2013 WL 607855 (S.D. Cal. Feb. 15, 2013) (collecting cases); *see also Watson v. Gish*, C 10-03770 SBA, 2011 WL 2160924 (N.D. Cal. June 1, 2011) (Armstrong, J.) (finding *Tapscott* readily distinguishable in a personal injury action where there was only one plaintiff whose claims arose from adverse reactions she suffered allegedly as a result of doctor's administration of a medication produced by fellow defendant); *see also N.C. ex rel. Jones v. Pfizer, Inc.*, C 12-00531 WHA, 2012 WL 1029518 (N.D. Cal. Mar. 26, 2012) (Alsup, J.) (collecting cases).

Even assuming, *arguendo*, that the doctrine could apply, *Tapscott* is inapposite because it is readily distinguishable on its facts. 77 F.3d at 1359-60. The comparison is not factually difficult. Tapscott originally brought a state law class action against one class of defendants, and later amended the complaint to join sixteen new plaintiffs, who alleged claims against twenty-two new defendants. *Id*. at 1359. In a second amended complaint, Tapscott added more plaintiffs and three additional defendants. One class representative, diverse from the original plaintiffs and asserting diversity, removed the putative class action and filed a motion to sever the claims. *Id.* at 1355. The trial court severed the claims, emphasizing that there was "no real connection" between the two sets of defendants. *Id*. at 1360. On appeal, the Eleventh Circuit considered whether claims against one defendant "aris[e] out of the same transaction or occurrence, or series of transactions or occurrences" or had any "real connection" to the claims asserted against different defendants. *Id*. The Court found that the alleged transactions involved were "wholly distinct," and, "finding no

12

allegation of joint liability between [the moving defendant] and any other defendant and no allegation of conspiracy, [the district court] held there was an improper and fraudulent joinder, bordering on a sham.'" *Id.* Affirming the trial court's denial of the plaintiff's motion to remand, the Eleventh Circuit opined that because the two sets of defendants were unrelated, the plaintiffs' "attempt to join these parties [was] so egregious as to constitute fraudulent joinder." *Id.* at 1360.

First, unlike *Tapscott*, the instant controversy does not involve two distinct classes of defendant who have "no real connection" to each other. To the contrary, there is only one plaintiff whose claims arise from negative effects she suffered allegedly as a result of the pelvic mesh surgery performed by Dr. Lopez, where the medical device implanted was produced by the doctor's fellow defendants. Although some factual and legal issues could exist that may bear uniquely upon each Defendant's liability, a nexus exists between a single event – the surgery performed on Ms. Dent – and all of the Defendants, who each have a role in that singular event. That nexus is absent in *Tapscott*.

Second, in *Tapscott*, joinder was accomplished with Rule 20, which was significant "because it provided the district court the basis for considering the plaintiff's motives for joinder, concluding that there had been 'improper and fraudulent joinder, bordering on a sham.' " *Thakor,* 2009 WL 1974511 at *4 (quoting in part *Tapscott,* 77 F.3d at 1360). In contrast, here, the Plaintiff brought her action against all of the Defendants in the original Complaint. She did not attempt to join any Defendant under Rule 20. Where the claimed misjoinder was not egregious, or where there was no resort to Rule 20, courts have not applied *Tapscott'*s reasoning. *See, e.g., Brazina v. Paul Revere Life Ins. Co.,* 271 F.Supp.2d 1163, 1172 (N.D. Cal. 2003) (refusing to apply *Tapscott*'s reasoning where a plaintiff brought causes of actions against different defendants without resort to Rule 20 and where there was no evidence claims were so unrelated as to constitute egregious misjoinder). Unlike *Tapscott*, there is no basis to question Plaintiff's motives for joinder.

13

On these bases, even if this circuit had adopted the doctrine of fraudulent misjoinder – which it has not – the Court concludes that *Tapscott* does not apply. Assuming, *arguendo*, the doctrine is operative, sufficient connection exists between the claims on the face of the complaint to militate against any such application of the doctrine. Even applying *Tapscott*, the Court does not find Plaintiff's actions egregious, and certainly not so egregious as to border on a sham.

**IV.    Motion for Attorney's Fees**

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In the context of a remand order, pursuant to section 1447(c), district courts have "wide discretion" to decide whether to award attorney's fees and costs. *See Moore v. Permanente Med. Grp.,* 981 F.2d 443, 447 (9th Cir. 1992). Courts generally award fees "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). A district court need not find "bad faith" as a prerequisite to an award of attorney's fees incurred to pursue a remand to state court. *Moore,* 981 F.2d at 446-48.

Rather than looking to Ninth Circuit precedent, removing Defendants made a strategic decision to rely on an Eleventh Circuit case about which much has been written within this circuit. Ample case law exists within the circuit illustrating that the Ninth Circuit has not adopted the doctrine attributed to *Tapscott*. In addition, the facts of *Tapscott* are baldly dissimilar to the facts in this case, as a multitude of judges in this circuit have had occasion to repeat in similar circumstances.[4] For these reasons, the Court concludes that the removing Defendants lacked an objectively reasonable basis for seeking removal.

---

[4] "Four other Oysters followed them, And yet another four; And thick and fast they came at last, And more, and more, and more--All hopping through the frothy waves, And scrambling to the shore." Lewis Carroll, *Through the Looking Glass and What Alice Found There*, in THE ANNOTATED ALICE: THE DEFINITIVE EDITION 213 (Martin Gardner ed., Norton Publishers) (2000). That is to say, this Court is suffering a crisis caused by a lack of judicial resources which is compounded by overwhelming caseloads; cases such as this compound the problem.

Plaintiff incurred costs in litigating the removal and remand issue, for which she is entitled to reimbursement. Courts have awarded attorney's fees for removing in similar circumstances. *See, e.g.*, *Thakor v. Burlington Ins. Co.,* No. 09–cv–1465 SBA, 2009 WL 1974511 (N.D. Cal. July 8, 2009); *Lopez v. Pfeffer*, 13-CV-03341 NC, 2013 WL 5367723 (N.D. Cal. Sept. 25, 2013). The Court has reviewed the declaration of Stewart R. Albertson in support of Plaintiff's motion to remand, and finds the calculation of attorney's fees (9.5 hours at a rate of $400 per hour) to be reasonable. Therefore, the Court will grant attorney's fees to Plaintiff, to be paid by removing Defendants in the amount of $3,800.

## V. CONCLUSION AND ORDER

In the absence of complete diversity, the Court concludes it lacks subject-matter jurisdiction. As subject-matter jurisdiction is lacking, pursuant to Title 28 U.S.C. § 1447(c), the case must be remanded. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. No. 8) is **GRANTED**.

It is **FURTHER ORDERED** that this action is **REMANDED** to the Superior Court of California for Kern County, from which it was removed.

It is **FURTHER ORDERED** that Defendants' Motion to Stay (Doc. No. 7) and any other pending motions are **DENIED AS MOOT** and all pending dates are **VACATED.**

It is **FURTHER ORDERED** that removing Defendants shall pay Plaintiff's attorney's fees of $3,800 within 14 days.

Finally, the Clerk of Court is **ORDERED** to **TERMINATE** the federal case.

DATED: 7/7/2014          /s/ SANDRA M. SNYDER
                         UNITED STATES MAGISTRATE JUDGE